(No. 1784— ▮▮▮▮▮▮▮▮▮▮▮▮

Franklin J. Gayles, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed December 11, 1934.*

Benjamin C. Pollard, for claimant.

Otto Kerner, Attorney General; John Kasserman, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

Claimant, F. J. Gayles, was a member of the 8th Infantry Headquarters Company, 2nd Battalion Illinois National Guard and on August 3, 1930, was on duty with his Company at

Camp Grant, Rockford, Illinois. He was ordered by his Commanding Officer, Lieutenant Christley, to go to his tent. Instead of directly doing so, he went to a telephone and then entered his tent. After being in the tent for a brief time, First Sergeant Ward, who had been searching for claimant to determine why he had not obeyed the command of Lieutenant Christley, came to his tent door and called him out; claimant walked to the door of the tent and Sergeant Ward stated "That he was tired of his damn foolishness," and thereupon struck claimant with a pistol across the nose, whereby claimant was rendered unconscious, suffered a cut and broken nose and general bruises to the mouth and face; that as a result his nose is stopped up and he cannot breathe clearly; that he still requires treatment for same and that there is a daily discharge of blood from same; that claimant is a Post Office employee and that his disability interferes in the ordinary conduct of his work. Claimant also complains that prior to his injury he had been in good health, but that after the attack in question he found that he was suffering from a slight hernia. Claimant seeks $3,000.00 award to cover the cost of an operation to his nose; for a hernia operation and to recompense him in a general way for the loss in ability claimed to have been suffered by him.

The declaration alleges that the assault in question occurred while claimant was *in the exercise of his rights and duties as a soldier.* Complaint also states that a military board was called and that the findings of the board were in affiant's favor, as he is informed and believes.

The report of the military board shows a diagnosis as follows:

"Two lacerated wounds on nose, severe;"
 (1) Left lateral aspect 1½ inch,
 (2) Right lateral aspect 1 inch- probable fracture,
"Injury occurred in line of duty."

Regardless of what the record shows as to what claimant had been doing earlier in the day, he was in his tent in compliance with instructions of his Commanding Officer at the time of the assault by Sergeant Ward.

What is meant by the expression *"while in line of duty"* is not always easy to determine.

In the claim of Gillespie for pension we find an apt illustration of the interpretation of the words, *in line of duty* (2 Dec. Dept. Int. Pensions 16) the claim was based upon an injury the claimant received in an altercation with a member of his company, in which the latter struck Gillespie upon the head with a board and injured his skull. The claim was disallowed upon the ground that the injury was not received while he was "in the line of duty." The question involved in the claim was stated as being, not whether claimant was to blame for the conduct of his assailant, but whether the blow struck by the latter was a necessary or even a reasonable incident of line of duty.

In passing upon a similar case the Pension Department of the Federal Government has said "the department holds in this and all similar cases that the wound, injury or disease must be the natural, probable or approximate result either mediate or immediate of the soldier's military duty, and that the phrase *line of duty* denotes that an act of duty performed, in order to entitle claimant to a pension, must have relation of causation, mediate or immediate to the wounds or injury which produced the disability or death."

The principal loss suffered by claimant is one of physical blemish and the continuing injury to his nose. The testimony of Dr. Gayles is that if an operation is performed upon the patient's nose he would again get normal functions of the nose, and that the probable total cost including hospitalization and medical service would not be in excess of $175.00.

No recoveries can be allowed under *Section 10, Article 16 of the Military and Naval Code of Illinois* for that section provides:

"for an allowance of stated pay in cases where the officer or enlisted man is wounded or disabled while on duty and lawfully performing the same, so as to have *prevented him from working at his profession, trade or calling.*"

*Under Section 11, Article 16 of said* code "any officer or enlisted man who shall be injured while performing his duty in pursuance of orders, shall have a claim against the State for financial help and the State Court of Claims shall adjust the same as the merits of each case may demand."

The court is in great doubt as to whether claimant was injured while performing his duty in pursuance of orders, within the meaning of the above Section 11, but whether he was performing any duty or not, he was in his tent where he had been ordered to go by his Commanding Officer. The unwarranted attack by Sergeant Ward causes the court to feel justified in extending every reasonable relief that can be justified by the court. An operation will remedy the nasal trouble at a cost not to exceed $175.00. There is nothing in the record sufficient to show any connection between the blow on the nose

and the small hernia which patient found himself to be troubled with at a date shortly thereafter, and no award can be justified for the existence of same or for an operation in the relief thereof. The record does not disclose any decrease in the actual amount of claimant's earnings, but there is a facial disfigurement which is apparently of a permanent character.

*Under the Employers' Liability Act of Illinois* claimant would be allowed whatever amount might be fixed upon arbitration of the claim not to exceed one-fourth of the amount payable as a death claim under *Section 7-A* of the Act. It is difficult to visualize claimant's appearance from the meager record at hand, but considering the record as we find it, an award for $200.00 will be allowed for facial disfigurement and $175.00 for medical and hospitalization care incident to a nasal operation, making a total of $375.00.

An award is, therefore, made in favor of claimant in the sum of Three Hundred Seventy-five Dollars ($375.00).